**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:20-cv-001470

MONARCH CASINO & RESORT, INC.,

Plaintiff,

v.

AFFILIATED FM INSURANCE COMPANY,

Defendant.

---

**AFFILIATED FM INSURANCE COMPANY'S**
**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

---

Affiliated FM Insurance Company ("AFM") submits the following motion for partial judgment on the pleadings:

## A. Introduction

Plaintiff Monarch Casino & Resort, Inc. ("Monarch") seeks insurance coverage for losses and expenses sustained because of the COVID-19 pandemic. AFM's Policy provides limited coverage for Communicable Disease, provided an insured satisfies the prerequisites. Unsatisfied with this limited coverage, Monarch seeks more expansive coverage under provisions that are clearly inapplicable. These provisions are inapplicable because they require "physical loss or damage," and as the vast majority of courts to have addressed the issue have concluded, Monarch's COVID-19 losses do not qualify. Coverage for Monarch's losses is also precluded by unambiguous exclusions for virus contamination and loss of use. Partial judgment on the pleadings as to all claims other than those based on the Communicable Disease Provisions is appropriate.

### B. Statement of Undisputed Facts

**1. Monarch owns and operates casinos in Colorado and Nevada.**

Monarch owns and operates the Atlantis Casino Resort in Reno, Nevada, and the Black Hawk Casino in Black Hawk, Colorado. (Compl., ¶¶ 2, 3 [ECF No. 1].)

**2. The AFM Policy.**

AFM provided first-party property insurance coverage to Monarch under Policy Number ES130 for the policy term of October 1, 2019 to October 1, 2020 (the "Policy"). (Compl., ¶¶ 97, 98.) The Policy covers property "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded." (Policy at 7 [attached as Exhibit A].)[1] The "EXCLUSIONS" preamble in turn provides that "the following exclusions apply unless otherwise stated[.]" (Policy at 23.)

The Policy further provides eight additional coverages or extensions for losses from impending or actual "physical loss or damage." (Policy at 29 (Decontamination Costs), 40 (Business Interruption), 45 (Attraction Property; Civil or Military Authority), 48 (Ingress/Egress), 51 (Protection and Preservation of Property - Business Interruption; Soft Costs), and 67 (Emergency Evacuation Expense).)

The Policy enumerates exclusions that apply "unless otherwise stated," two of which are of particular relevance here. First, the Contamination Exclusion precludes coverage for "any cost due to contamination," where "contamination" means "any

[1] The Policy page number references are to the ECF page numbers.

condition of property due to the actual or suspected presence of . . . virus[.]" (Policy at 25, 63.) Second, the Policy excludes "loss of use." (Policy at 25.)

The Policy's Communicable Disease Provisions are two potentially applicable extensions of coverage that are exceptions to the Contamination and Loss of Use exclusions. (Policy at 28, 46.) These two coverages do *not* require a showing of physical loss or damage. (*Id.*) Each "communicable disease" coverage is subject to a $100,000 annual aggregate sub-limit. (Policy at 9–10.) These two coverages are not at issue here.

**3. The COVID-19 pandemic.**

COVID-19 is an infections communicable disease caused by the novel coronavirus. (Compl., ¶¶ 9, 11.) On March 13, 2020, former President Donald J. Trump declared that the COVID-19 outbreak in the United States constituted a national emergency. (Compl., ¶ 49.)

**4. The States of Colorado and Nevada issue orders shutting down casinos to slow the spread of COVID-19.**

**a. The Colorado orders**

On March 16, 2020, the Executive Director of the Colorado Department of Public Health and Environment issued Public Health Order 20-22, closing casinos and other businesses in order to slow the spread of COVID-19. (Compl., ¶ 53; Public Health Order 20-22, at 1, 6 [attached as Exhibit B].) From March 16, 2020 through at least the date of the filing of the Complaint, the Black Hawk Casino remained closed to the public under the March 16, 2020, and subsequent orders. (Compl., ¶¶ 56, 96.)

**b. The Nevada orders**

On March 17, 2020, Nevada Governor Steve Sisolak directed the closure to the public of casinos. (Compl., ¶ 82.) The stated reason was "to protect the health and safety of Nevadans by preventing people from coming together unnecessarily, where people who have the infection can easily spread it to others." (COVID-19 Risk Mitigation Initiative, at 1 [attached as Exhibit C].) From March 17, 2020 through at least the date of the filing of the Complaint, the Atlantis Casino Resort was closed to the public under the March 17, 2020, and subsequent orders. (Compl., ¶ 96.)

**5. Monarch submits a claim to AFM.**

On April 14, 2020, Monarch notified AFM of a claim under the Policy. (Compl., ¶ 237.) In addition to seeking Communicable Disease coverage, Monarch sought coverage for property damage, Decontamination Costs, Expediting Expenses, Professional Fees, Protection and Preservation of Property – Property Damage, Business Interruption, Attraction Property, Civil or Military Authority, Ingress/Egress, Protection and Preservation of Property – Business Interruption, Soft Costs, and Emergency Vacating Expense. (Compl., ¶ 241.)

## C. Judgment on the Pleadings Standard

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Adams v. Jones*, 577 F. App'x 778, 782 (10th Cir. 2014). A Rule 12(c) motion is evaluated like a motion to dismiss: accepting all factual allegations as true and making all reasonable inferences in plaintiff's favor, whether the

complaint contains sufficient factual matter to state a plausible claim to relief. *See Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005). A Court may consider authentic documents referenced in the complaint, and may take judicial notice of documents that are a matter of public record. *Park Univ. Enters. Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

## D. Argument

### 1. Choice of law

Under Colorado law, an insurance contract is governed by the law of the state with the most significant relationship to the insurance contract. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). Here, Nevada has the most significant relationship to the Policy. Monarch is a Nevada corporation (Compl., ¶ 1), seven of the ten insured premises are located in Nevada (Policy at 7–8), the Policy was issued to Monarch at its principal place of business in Nevada (Policy at 5), and payment, if any, would be made to Monarch in Nevada (Policy at 54). To the extent the laws of Colorado and Nevada diverge, Nevada law applies.

### 2. Principles of Insurance Contract Interpretation.

The interpretation of an insurance policy is a question of law appropriate for judgment on the pleadings. *Fed. Ins. Co. v. Coast Converters, Inc.*, 339 P.3d 1281, 1284 (Nev. 2014); *Union Fire Ins. Co. v. Fed. Ins. Co.*, 213 F. Supp. 3d 1333, 1340 (D. Colo. 2016). Where the policy provisions are unambiguous, the court will enforce the policy as written, giving the words their plain and ordinary meaning. *Fed. Ins. Co.*, 339 P.3d at 1285; *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1359 (Colo. 1993). Courts may not rewrite

a policy or force a strained construction to interpret a policy against the insurer. *Ins. Grp. v. Stonik ex rel. Stonik*, 867 P.2d 389, 391 (Nev. 1994); *Auto-Owners Ins. Co. v. Csaszar*, 893 F.3d 729, 734 (10th Cir. 2018) (applying Colorado law). Courts should read the provisions of a policy as a whole, not in isolation. *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014); *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239 (Colo. 1992).

**3. The Policy expressly excludes coverage for Monarch's losses.**

**a. The Contamination Exclusion precludes coverage of Monarch's claims.**

The Contamination Exclusion unambiguously precludes coverage of "any cost due to contamination" where contamination means "any condition of property due to the actual or suspected presence of any . . . virus." (Policy at 26, 63.) The Contamination Exclusion precludes coverage of Monarch's claims. Monarch alleges that its losses result from the presence of COVID-19. (*E.g.*, Compl., ¶¶ 122–23, 145, 158, 233.) The Contamination Exclusion accordingly applies, and Monarch's losses are not covered.

Nevada and Colorado courts enforce unambiguous contamination exclusions like the one here. In *Circus Circus LV, LP v. AIG Spec. Ins. Co.*, No. 20-cv-1240, 2021 WL 769660, at *6 (D. Nev. Feb. 26, 2021), a Nevada federal district court recently found COVID-19 losses to "squarely" fall within an exclusion that precluded coverage for the dispersal of pollutants or contaminants, which were defined to include "virus." *See also J & S Enters. Inc. v. Cont'l Cas. Co.*, 825 P.2d 1020, 1022 (Colo. Ct. App. 1991) (contamination exclusion precluded coverage for asbestos contamination in mall).

Most courts that have examined comparable exclusions hold that they preclude coverage of losses related to the pandemic and closure orders. In *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-cv-4434, 2020 WL 7342687, at *2 (N.D. Cal. Dec. 14, 2020), for instance, the court concluded that an exclusion for the "[p]resence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus" barred coverage for coronavirus losses.

**b. The Loss of Use Exclusion precludes coverage of Monarch's claims.**

The Policy excludes "loss of use." (Policy at 25.) Undefined terms should be given their plain and ordinary meaning. *Fid. Nat'l Title Ins. Co. v. Woody Creek Ventures, LLC*, 830 F.3d 1209, 1213 (10th Cir. 2016). "Under the plain meaning of 'loss of use,' the insured must have been deprived of the use of its tangible property." *See, e.g., Travelers Prop. Cas. Co. of Am. v. Mixt Greens, Inc.*, No. C 13-0957 PJH, 2014 WL 1246686, at *5 (N.D. Cal. Mar. 25, 2014). "Loss of use" means just that—the property in question cannot be used. Monarch's losses were largely caused by its inability to use its casinos. (Compl., ¶¶ 145, 167, 170.) Its losses are accordingly excluded.

**4. There is no property damage or other assorted coverage because Monarch has not plausibly alleged "physical loss or damage."**

**a. The presence of coronavirus is not physical loss or damage.**

Most of the coverage provisions Monarch invokes require Monarch to demonstrate physical loss or damage. *Supra* at 2. The presence of COVID-19 does not constitute physical loss or damage.

"Physical loss or damage" means a structural or physical alteration. *Levy Ad Grp., Inc. v. The Chubb Corp.*, No. 20-cv-763, 2021 WL 777210, at *3 (D. Nev. Feb. 16, 2021) ("structural or physical change"); *Hasan v. AIG Prop. Cas. Co.*, No. 16-cv-2963, 2018 WL 10335670, at *4 (D. Colo. Aug. 2, 2018) ("distinct, demonstrable, or physical alteration"), *aff'd*, 935 F.3d 1092 (10th Cir. 2019). Economic losses do not qualify. *Levy Ad Grp.*, 2021 WL 777210, at *3; *Hasan*, 2018 WL 10335670, at *3.

Monarch's general assertions that employees and patrons had COVID-19 are not sufficient. *See, e.g., Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-cv-2211, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) ("Insured's allegation that the virus likely contaminated its property fails to raise a 'right of relief above the speculative level.'").

Even if Monarch had sufficiently alleged the presence of COVID-19 at its premises, there would be no structural or physical alteration. As Monarch admits, the COVID-19 virus lives on surfaces only temporarily (Compl, ¶ 13), and is removed through cleaning (Compl., ¶ 203.) It does not structurally alter property in any way. The Period of Liability underscores this reality. The Period of Liability for business interruption coverages ends when "[t]he lost or damaged property could be repaired or replaced and made ready for production or business operations or services[.]" (Policy at 44.) This shows that physical loss is the kind of loss that can be addressed through replacement, and physical damage is the kind of damage that can be addressed through repair. The presence of COVID-19 is neither. COVID-19 is accordingly not physical loss or damage.

For these reasons, the great majority of courts hold that the presence of COVID-19 is not physical loss or damage. In *Circus Circus*, a Nevada federal district court concluded that the infection of casino employees with COVID-19 did not constitute physical loss or damage to the casino under Nevada law. 2021 WL 769660, at *3-4. The court first noted that "any alleged surface-contamination is ephemeral—the virus is only detectable on surfaces for 'up to three days.'" *Id.* at *4. Next the court explained that the casino shut down not because of damage from COVID-19, but because the governor of Nevada ordered it to shut down. *Id.* Last, the court reasoned that the casino "fail[ed] to allege any actual, physical change to its property requiring remediation. The paucity of these allegations is hardly sufficient to show the type of distinct, demonstrable, physical alteration or change" that is necessary. *Id.*

What's more, as the court in *Circus Circus* stated, California courts "often guide Nevada's." *Id.* at *3.[2] And California courts have overwhelmingly concluded that the presence of COVID-19 is not physical loss or damage. *See, e.g., Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, No. 3:20-CV-01129-H-MDD, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021) (noting there is no California authority finding the presence of COVID-19 to be physical loss or damage); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, No. 20-CV-

[2] This is especially true in insurance cases. *See, e.g., Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1244 (Nev. 2011) ("We agree with the reasoning set forth by our sister state of California in our adoption of this [efficient proximate cause] doctrine."); *Jackson v. State Farm Fire and Cas. Co.*, 835 P.2d 786, 789 (Nev. 1992) (adopting California's manifestation rule as the trigger of coverage in first-party progressive property loss cases).

03461-MMC, 2020 WL 7495180, at *4 (N.D. Cal. Dec. 21, 2020) (concluding that the presence of COVID-19 is not physical loss or damage).

Courts in the Tenth Circuit and elsewhere have reached the same conclusion. *See, e.g., Promotional Headwear Int'l*, 2020 WL 7078735, at *8 ("Even assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage . . . because its presence can be eliminated."); *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 20-cv-401, 2020 WL 6436948, at *4–5 (S.D. Wa. Va. Nov. 2, 2020) ("COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant.").

**b. Loss of use is not physical loss or damage.**

Nor does loss of use resulting from closure orders constitute physical loss or damage. A temporary limitation on the use of property is no more than an economic loss. And an economic loss is not physical loss or damage under the law of Nevada and Colorado. *Levy Ad Grp.*, 2021 WL 777210, at *3; *Hasan*, 2018 WL 10335670, at *3.

Again, most courts that have addressed this question have concluded that loss of use from COVID-19 closure orders does not qualify as physical loss or damage. In *Levy Ad Group*, for example, the District of Nevada concluded there was no physical loss or damage where the insured alleged that Governor Sisolak's orders prevented it from conducting business operations. 2021 WL 777210, at *3. The court reasoned, relying on many other court decisions, that "'economic losses' caused by COVID-19 closures" "do not trigger policy coverage predicated on direct physical loss or damage." *Id.*

Other courts, especially those in California, hold the same. "Every California court that has addressed COVID-19 business interruption claims to date has concluded that government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute 'direct physical loss of or physical damage." *Protégé Rest. Partners LLC v. Sentinel Ins. Co.*, No. 20-cv-03674-BLF, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021) (citing cases).

Monarch's expected reliance on *Western Fire Insurance Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) is misplaced. As an initial matter, *Western Fire* does not apply because interpretation of the Policy is governed by Nevada law. Furthermore, *Western Fire* is distinguishable. In *Western Fire*, the local fire department ordered the closure of a church after gasoline had seeped into the foundation and interior walls of the building, making the building dangerous and uninhabitable. *Id.* at 54–56. Because the closure was the "consequential result" of the gasoline infiltration, the court held that the loss of use qualified as physical loss or damage. *Id.*

Monarch's case is devoid of the facts essential to the holding of *Western Fire*. First, here, the closure orders were prophylactic measures taken to prevent the spread of coronavirus in society at large, not the "consequential result" of a condition specific to Monarch's casinos. Second, there was no physical change here. Unlike the gasoline contamination that required physical remediation, the virus can be removed through cleaning. And third, Monarch's premises are not uninhabitable; closure to the public is not closure to all people for all purposes.

Several courts have accordingly found *Western Fire* inapplicable to COVID-19 closures. *See, e.g., Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 20-cv-275, 2020 WL 6163142, at *5–7 (S.D. Ala. Oct. 21, 2020) (distinguishing *Western Fire* because it concerned "premises that were rendered unusable due to an event which had a tangible effect on the property"); *Long Affair Carpet & Rug, Inc. v. Liberty Mut. Ins. Co.*, No. 20-cv-1713, 2020 WL 6865774, at *2–3 (C.D. Cal. Nov. 12, 2020) (distinguishing *Western Fire* because it involved "a structure being rendered 'uninhabitable' or 'useless'").

**c. Communicable Disease coverage further confirms that there is no physical loss or damage.**

The Communicable Disease Provisions do not require "physical loss or damage." (Policy at 28, 46.) They accordingly provide no support for Monarch's assertion that the presence of a communicable disease constitutes physical loss or damage. Indeed, if "physical loss or damage" was interpreted to include loss of use or the presence of a virus that can be removed by cleaning, the Communicable Disease Provisions would be redundant. Courts must avoid reading a policy in a way that would render its terms meaningless. *CP Food & Bev., Inc. v. United States Fire Ins. Co.*, 324 F. Supp. 3d 1172, 1177 (D. Nev. 2018); *Gen. Sec. Indem. Co. of Ariz. v. Mountain States Mut. Cas. Co.*, 205 P.3d 529, 537 (Colo. Ct. App. 2009).

**5. There is no Business Income or other assorted coverage because Monarch's claimed losses were caused by closure orders.**

Monarch's losses are not covered under any provision that requires physical loss or damage because Monarch's claimed losses were caused by governmental orders, not physical loss or damage. By its own admission, both the Atlantis Casino Resort and the

Black Hawk Casino were closed to the public "pursuant to the respective civil and executive orders of Nevada and Colorado." (Compl., ¶ 96.)

**6. There is no Civil or Military Authority coverage because the closure orders were not issued as a direct result of physical loss or damage.**

Nor is there coverage under the Civil or Military Authority provision. That coverage requires that a civil authority order "prohibits access to a location provided such order is the direct result of physical damage of the type insured at a location or within five (5) statute miles of it." (Policy at 45.)

Monarch closed the Black Hawk Casino and Atlantis Casino in direct response to the orders issued by Colorado and Nevada (Compl., ¶¶ 56, 80–86, 96.) Those orders were issued to stop the spread of coronavirus. (Public Health Order 20-22, at 1; Risk Mitigation Initiative, at 1; Emergency Directive 002, at 1.) They were not issued as a direct result of physical loss or damage at or within five miles of the Monarch casinos.

An order does not give rise to civil authority coverage unless it was issued as a direct result of physical damage at an insured location or nearby property. In *Dickie Brennan & Co. v. Lexington Insurance Co.*, 636 F.3d 683 (5th Cir. 2011), the court held there was no civil authority coverage where an evacuation order sought to prevent future damage, and there was no property damage when the order issued. *Id.* at 685–86.

Courts across the country have found no civil authority coverage in coronavirus cases like this one. In *Protégé Rest. Partners LLC*, for instance, the court held that there was no civil authority coverage where the relevant closure orders provided they were

created to slow the spread of COVID-19, not in response to physical loss or damage.

2021 WL 428653, at *6.

**7. There is no Decontamination Costs coverage because Monarch's properties were not contaminated as a direct result of insured physical damage or the enforcement of a law or ordinance requiring the removal of coronavirus.**

The Decontamination Costs provision covers the increased cost of decontamination when incurred to comply with the enforcement of a law or ordinance regulating "contamination due to the actual not suspected presence of contaminant(s)" "[i]f insured property is contaminated as a direct result of insured physical damage." (Policy at 29.) Here, Monarch has not plausibly alleged that the coronavirus contaminated its properties as the direct result of any insured physical damage or the enforcement of a law or ordinance requiring the removal of coronavirus.

**8. Judgment on the pleadings is appropriate on Monarch's extra-contractual claims because Monarch's claim was not covered.**

Monarch also alleges claims for bad faith breach of insurance contract and for violation of Colorado Revised Statutes § 10-3-1115. These claims must fail if, as is the case here, coverage was properly denied. *656 Logan St. Condo. Ass'n, Inc. v. Owners Ins. Co.*, 389 F. Supp. 3d 946, 957 (D. Colo. 2019). There is also no indication of knowledge or recklessness on the part of AFM, as required for a bad-faith claim. *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985).

Furthermore, under section 10–3–1115, an insurer's delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a covered

benefit without a *reasonable basis* for that action." Colo. Rev. Stat. § 10–3–1115(2) (emphasis added). Monarch has not plausibly alleged that AFM's denial of coverage was without a reasonable basis.

**E. Conclusion**

For the foregoing reasons, this Court should grant AFM's motion.

Dated: March 5, 2021

Respectfully submitted,

**ROBINS KAPLAN LLP**

/s/ Scott G. Johnson

Scott G. Johnson
800 LaSalle Avenue
2800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
sjohnson@robinskaplan.com

*Attorneys for Defendant Affiliated FM Insurance Company*

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2021, I served the foregoing AFM'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS via the CM/ECF system on the following people:

Bradley A. Levin
Nelson A. Waneka
1512 Larimer Street, Ste. 650
Denver, CO 80202
bal@levinsitcoff.com
naw@levinsitcoff.com

Russell E. Yates
Ryan R. Yates
1819 Denver West Drive, Suite 225
Golden, CO 80401
ryates@ylf.law
ryanyates@ylf.law

/s/ Donna LaFrance
Donna LaFrance