**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:20-cv-001470-RBJ

MONARCH CASINO & RESORT, INC.,

Plaintiff,

v.

AFFILIATED FM INSURANCE COMPANY,

Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [DOC. NO. 36]**

---

Plaintiff, Monarch Casino & Resort, Inc., through its attorneys, Bradley A. Levin and Nelson A. Waneka of LEVIN SITCOFF PC, submits the following Response to Defendant's Motion for Partial Judgment on the Pleadings [Doc. No. 36]:

## INTRODUCTION

Defendant Affiliated FM Insurance Company ("AFM") argues that despite purchasing $60,000,000 in coverage limits for business interruption resulting from physical loss or damage "of the type insured" by the Policy, Plaintiff Monarch Casino & Resort ("Monarch") can recover no more than $200,000 in benefits. AFM is wrong.

*First*, the insurer's Motion largely ignores the 327 well-pleaded paragraphs of Monarch's Complaint. The Complaint alleges that Monarch's casinos had the actual presence of COVID-19, it alleges every fact necessary to trigger the various coverages at issue, and all these allegations must be taken as true and viewed in the light most favorable to Monarch. *Second*, AFM's Motion is premised on an interpretation of the Policy that is at odds with the contract's plain terms. *Third*,

AFM stretches the facts when it suggests that a "vast majority" of courts have determined COVID-19 doesn't cause physical loss or damage. AFM's Motion should be denied.

## LEGAL STANDARD

A motion for judgment on the pleadings is treated like a motion to dismiss. *Sanders v. Mt. Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012). The court accepts all facts pleaded by the non-moving as true and indulges all reasonable inferences from the pleadings in that party's favor. *Id.* Motions for judgment on the pleadings are generally viewed with disfavor. *See Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002).

## THE COMPLAINT'S ALLEGATIONS

### I. The Policy

1. AFM issued a policy of property insurance to Monarch, Policy No. ES130, with effective dates of coverage from October 1, 2019, through October 1, 2020 (the "Policy"). (Doc. No. 1, p.12, ¶¶97-98; Doc. No. 36-1).

2. The Policy states <u>four times</u> that all coverage is subject to a threshold physical loss or damage requirement. (Doc. No. 36-1, pp.5, 7, 8, 22).

3. The Policy contains no written exceptions to this requirement. (Doc. No. 36-1).

4. Among the risks expressly insured (*i.e.*, physical loss or damage), the Policy contains coverage for "Communicable Disease – Property Damage" if any of Monarch's casinos has the actual presence of a communicable disease and access is limited, restricted, or prohibited by a government order. (Doc. No. 1, p.13, ¶109; Doc. No. 36-1, p.28).

5. Additionally, the Policy contains coverage for "Communicable Disease – Business Interruption" which states, in no uncertain terms, that "**[t]his Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability at such**

**described location with such presence of communicable disease."** (Doc. No. 1, p. 22, ¶172; Doc. No. 36-1, p.46) (emphasis added).

6. The Policy's Business Interruption provision, in turn, states "[t]his Policy insures Business Interruption loss, as provided in the Business Interruption Coverage, as a direct result of physical loss or damage of the type insured" by the Policy. (Doc. No. 1, p.16, ¶132l Doc. No. 36-1, p.40).

7. Likewise, the Policy's Business Interruption Coverage has limits of $60,000,000 per occurrence. (Doc. No. 1, p.18, ¶140; Doc. No. 36-1, p.16).

8. COVID-19 is a "communicable disease" as that term is used in the Policy. (Doc. No. 1, p.14, ¶121).

9. The Monarch Casino and the Atlantis Casino Resort are "described locations" as that term is used in the Policy. (Doc. No. 1, p.12, ¶¶102-103).

10. The actual presence of COVID-19 at the Monarch Casino and/or the Atlantis Casino Resort, coupled with access to the casino being limited, restricted, or prohibited by an order of an authorized government agency, is a type of physical loss or damage insured by the Policy. (Doc. No. 1, pp.13, 15 , 19, 21, 26, 27, ¶¶110, 122-23, 148, 164, 205, 213).

11. The Policy provides further coverage extensions for, among other things: (1) orders of a civil or military authority; (2) damage to attraction properties; (3) prevention of ingress/egress; (4) decontamination costs; (5) emergency evacuation expenses; (6) professional fees; (7) soft costs; (8) expediting expenses; and (9) protection and preservation of property. (Doc. No. 1, pp. 19-30, ¶¶146-236).

## II. The Closure Orders

12. Consistent with Colorado executive orders, the Monarch Casino was closed from

March 16, 2020 through at least the date of the complaint's filing. (Doc. No. 1, pp.5-10, ¶¶43-77).

13. Three of the orders stated that COVID-19 "physically contributes to property loss, contamination, and damage due to its propensity to attach to surfaces for prolonged periods of time." (Doc. No. 1, p.10, ¶77).

14. Consistent with Nevada executive orders, the Atlantis Casino Resort was closed from March 17, 2020 through at least the date of the complaint's filing. (Doc. No. 1, pp.10-12, ¶¶78-96).

## III. Monarch's Claims And Allegations

15. Monarch has alleged that COVID-19 was actually present in the Monarch Casino and the Atlantis Casino Resort. (Doc. No. 1, pp.15, 23, 33, ¶¶127, 174, 181, 249).

16. Monarch has alleged that Team Members and patrons at the casinos likewise had COVID-19. (Doc. No. 1, pp.23, 33, ¶¶175-76, 182-83, 253-54).

17. Among other things, Monarch has alleged that: (1) COVID-19 is a communicable disease that is highly infectious; (2) when a person infected with COVID-19 coughs or sneezes, droplets containing the virus can be dispersed into the air and/or deposited on surfaces; (3) the virus can spread when an infected person touches his or her mouth, nose, or eyes and thereafter touches another person or surface; (4) when deposited in this manner, the COVID-19 virus "physically infects and can stay alive on surfaces for up to 17 days;" and (5) property exposed to COVID-19 is unsafe and dangerous. (Doc. No. 1, pp.2-3, ¶¶9, 11-13, 18).

18. Monarch has alleged that access to the Monarch Casino and the Atlantis Casino Resort was limited, restricted, or prohibited by an order of an authorized government agency regulating COVID-19. (Doc. No. 1, p.24, ¶184).

19. Monarch has alleged that it incurred reasonable and necessary costs to clean-up,

remove, or dispose of the presence of COVID-19 at the Monarch Casino and the Atlantis Casino Resort. (Doc. No. 1, pp.15, 26, ¶¶127, 203-04).

20. Monarch has alleged that it incurred business interruption losses of between $7,500,000 and $12,500,000 per month as a result of COVID-19 and the attendant executive orders directing the closure of the Monarch Casino and the Atlantis Casino Resort. (Doc. No. 1, p.18, ¶145).

21. Indeed, Monarch has alleged every factual predicate for each of the coverages at issue in AFM's Motion for Partial Judgment on the Pleadings. (Doc. No. 1, pp. 12-30, ¶¶97-236).

## ARGUMENT

### I. There Is No Conflict Of Laws

Without identifying any substantive differences between the laws of Colorado and Nevada, AFM asserts that "[t]o the extent the laws of Colorado and Nevada diverge, Nevada law applies." (Motion at 5). But the first principle of the conflict of law analysis is that there must be a conflict. Where two state laws may apply to a matter, but there is no conflict between them, "the court forgoes the difficult task of parsing the choice of law rules." *McKenna v. CDC Software, Inc.*, Civil Action No. 08-cv-00110-EWN-MEH, 2008 U.S. Dist. LEXIS 68041, at *15 (D. Colo. Sep. 9, 2008) (citing *Excell, Inc. v. Sterling Boiler & Mech.*, 106 F.3d 318, 321 (10th Cir. 1997)); *SBKC Service Corp. v. 1111 Prospect Partners L.P.,* 105 F.3d 578, 581 (10th Cir. 1997).

"In general, the party seeking a choice-of-law determination bears the burden of showing that a conflict exists." *Mesa Labs., Inc. v. Fed. Ins. Co.*, 436 F. Supp. 3d 1092, 1095 (N.D. Ill. 2020) (citing *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014)). Here, not only has AFM made no attempt to meet its burden of demonstrating that such a conflict exists, it has affirmatively taken the position that "[it] does not believe there is any real conflict between

the laws of Colorado and Nevada as they relate to contract interpretation or the issues raised by [the] motion." (Doc. No. 35, p.8). It follows that because Colorado is the forum state, and the parties agree there's no conflict with the laws of Nevada, the Court should default to Colorado's substantive law. *See, e.g.*, *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1279 (D. Utah 2017).

Further, if this matter did require a conflict of law analysis, it would be much more complex than what AFM lays out, and it would result in a finding that Colorado law applies. The Complaint contains four claims—breach of contract, common law bad faith breach of contract, statutory bad faith breach of contract, and declaratory judgement. The bad faith claim sounds in tort, while the breach of contract claim sounds in contract; accordingly, each is subject to a different choice of law analysis. *See TPLC, Inc. v. United Nat'l Ins. Co.*, 44 F.3d 1484, 1490-91 and 1495-96 (10th Cir. 1995) (finding that Pennsylvania law applied to Plaintiff's breach of contract claim, while Colorado law applied to Plaintiff's tortious bad faith claim). The statutory bad faith claim may also require a separate analysis. *Ellis v. Liberty Life Assurance Co. of Bos.*, 333 F. Supp. 3d 1083, 1092 (D. Colo. 2018). Because AFM has not met its burden of establishing that a conflict of laws exists, and because it has, in fact, acknowledged that no such conflict exists, Colorado law governs.

## II. The Actual Presence Of A Dangerous Communicable Disease Is Physical Loss Or Damage Under The Policy's Plain Terms

The Policy insures risks of physical loss or damage, it contains $60,000,000 in limits for business interruption that Monarch sustains a result of physical loss or damage "of the type" insured by the Policy, and one "type" of coverage expressly provided by the Policy is for communicable diseases. To avoid this Policy language, AFM offers an elaborate construction: (1) the Policy entirely excludes viruses and loss of use; (2) the communicable disease coverages are

"exceptions" to those exclusions; and (3) the communicable disease coverages aren't subject to the Policy's physical damage requirement because they're "exceptions" to that too. None of this comports with the Policy's language.

*A. The Policy Can't Exclude Viruses While Covering Communicable Viral Diseases*

AFM contends that the Policy unambiguously excludes any cost due to "contamination." (Motion at 6). Because the Policy defines contamination" as "any condition of property due to the actual or suspected presence of any . . . virus, " and because "Monarch alleges that its losses result from the presence of COVID-19," AFM avers without further analysis that "[t]he Contamination[1] Exclusion accordingly applies, and Monarch's losses are not covered." (*Id.*).

This argument ignores that the Policy affirmatively covers the actual presence of a communicable disease at Monarch's casinos as well as "decontamination" costs. Moreover, as AFM has repeatedly admitted, COVID-19 is a communicable disease. (Doc. No. 18, p.14, ¶¶aaaa-bbbb). It defies all logic and common sense for an exclusion to negate coverages expressly provided by the policy contract. In other words, the Policy cannot reasonably be read to exclude all coverage for Monarch's claims on the ground that the presence of COVID-19 is an excluded "contaminant," when such presence expressly gives rise to coverage under both the communicable disease and decontamination coverages. At best, AFM's construction gives rise to an irreconcilable ambiguity that must be construed in Monarch's favor under both Colorado and Nevada law. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 820 (Colo. 2004); *Nat'l Union Fire Ins. V. Reno's Exec. Air*, 682 P.2d 1380, 1383 (Nev. 1984).

[1] Monarch does not concede that the Policy's Contamination Exclusion is unambiguous. When interpreted literally, every loss could be considered a contaminant under the Policy's definition of the term. Regardless, the definition of a contaminant is ambiguous because it cannot be reconciled with the Policy's affirmative communicable disease coverage.

*B. The Loss Of Use Exclusion Doesn't Apply*

The "Loss of Use" exclusion limits coverage to losses flowing from covered causes and excludes losses caused by remote factors unrelated to the original cause, *i.e.*, it excludes consequential losses and/or losses not caused by a covered cause of loss. As another federal court explained, "to the extent any loss claimed to be a loss of business income by [the insured] was not lost as a direct result of [the covered cause of loss] but rather as a consequence of any other reason, then such loss is excluded from coverage and there can be no recovery . . . for such loss." *Dictiomatic, Inc. v. U.S. Fid. & Guar. Co.*, 958 F. Supp. 594, 604 (S.D. Fla. 1997).

AFM's attempt to apply the "Loss of Use" exclusion turns the provision on its head. It would render Monarch's business income coverage illusory, because the entire point of business income coverage is to cover business losses while the insured cannot use its property for its intended purpose. The "Loss of Use" exclusion cannot reasonably be read—as AFM suggests—to exclude any and all coverage when an insured loses the ability to use its property. Regardless, here Monarch's business income loss was caused by physical loss or damage expressly insured by the Policy (the presence of a communicable disease), not by a loss of use based on some other, uncovered cause. The Policy covers business income and property damage resulting from a covered cause of loss (*i.e.*, all risks of physical loss or damage). Moreover, the Colorado Supreme Court has rejected the precise argument advanced by AFM. *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968) (rejecting property insurer's assertion that presence of gasoline vapors constituted excluded "loss of use" rather than covered "physical loss."). The "Loss of Use" exclusion simply has no application here. Not surprisingly, AFM offers no authority whatsoever suggesting otherwise.

*C. The Communicable Disease Coverages Aren't "Exceptions" To The Virus And Loss Of Use Exclusions*

Aware of the inability to harmonize the Contamination and Loss of Use exclusions with the Policy's affirmative coverage for communicable disease losses, AFM avers that coverage for communicable disease is an "exception" to these exclusions. (Motion at 3). Nowhere, however, does the Policy state or even suggest this.

AFM knew how to draft exceptions when it wanted to and did so for a great number of other Policy exclusions. For example, the Policy excludes coverage for "loss or damage caused by or resulting from changes of temperature [and] changes in relative humidity . . . *except* as provided by the Change of Temperature and Off-Premises Service Interruption coverages in this Policy." (Doc. No. 36-1, p.25). The Policy excludes lack of incoming electricity, fuel, water, and data "*except* as provided by the Off-Premises Data Services and Off-Premises Service Interruption coverages in this Policy." (*Id.* at p.24). And there over a dozen more. Notably absent is any language suggesting the communicable disease coverages are exceptions to the Contamination and Loss of Use exclusions.

Under both Colorado and Nevada law, exclusions must be clear, easily understandable, and subject to no other reasonable interpretation. *Renfandt v. N.Y. Life Ins. Co.*, 2018CO49, ¶18; *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014). By omitting any language indicating that the communicable disease coverages are, in actuality, exceptions to the Contamination and Loss of Use exclusions, AFM cannot make this showing.

*D. The Communicable Disease Coverages Aren't "Exceptions" To The Physical Loss Or Damage Requirement—They Concern "Property Damage"*

Cognizant of similar difficulties posed by the fact that communicable disease is among the risks specifically insured by the Policy, AFM argues that the communicable disease coverage

presents yet another "exception" to the Policy's physical damage requirement. It doesn't.

*First,* the Policy states four times that it insures against risks of physical loss or damage. Not once does it identify an "exception" for communicable diseases or anything else; indeed, they are *extensions* of Policy coverage. By taking their place among the risks expressly insured by the Policy—a Policy that only insures against risks of physical loss or damage—communicable diseases are necessarily a "type" of physical loss or damage insured by the Policy. Essentially every property insurance policy contains a threshold physical loss or damage trigger for coverage. Indeed, the undersigned are unaware of a single departure. AFM can't get out from underneath the language *it drafted* by suggesting, when it's convenient to do so, that the Policy wordlessly created an exception to the physical damage requirement for communicable diseases.

*Second*, the Policy labels one of the communicable disease coverages as "**Communicable Disease—Property Damage**." Headings such as this, like all terms in an insurance policy, must be countenanced in the interpretative process. *See Rockhill Ins. Co. v. CFI-Global Fisheries Mgmt.*, 782 Fed. Appx. 667, 672 n.1 (10th Cir. 2019) (unpublished); *FDIC v. Fisher*, 292 P.3d 934, 937 (Colo. 2013). Likewise, the Policy states that the deductible for the business interruption coverage owed pursuant to the communicable disease provisions is tied to "the location where the **physical damage** happened." (Doc. No. 36-1, p.12) (emphasis added). By calling the presence of a communicable disease both "property damage" and "physical damage," the Policy clearly indicates that rather than being an "exception" to the physical loss or damage requirement, the presence of a communicable disease *is* physical loss or damage.

*Third*, saying communicable diseases are "excepted" from the physical loss or damage requirement doesn't mean they don't cause physical loss or damage. Communicable diseases like COVID-19 are physical things, and they cause "property damage" contemplated by the Policy.

Here, Monarch alleged that its casinos had the actual presence of COVID-19, that COVID-19 "physically infects" property, and that, consistent with Colorado executive orders, it "physically contributes" to property loss. Even if AFM claims that communicable diseases are excepted from the physical damage requirement, they still cause physical damage nonetheless.

* * *

In the end, the notion that an insured location can have the actual presence of a communicable disease and be shut down by a government order without sustaining physical loss or damage "of the type insured" by the Policy, when the Policy calls this precise scenario "property damage," and includes it among the specific risks insured under a contract stating in quadruplicate that it only covers risks of physical loss or damage, is unreasonable. An ordinary insured would not understand the Policy in the manner urged by AFM. AFM cannot meet its heavy burden of establishing that its interpretation is the *only* reasonable one.

## III. The Actual Presence Of A Dangerous Communicable Disease Constitutes Physical Loss Or Damage Under Established Case Law

AFM exaggerates that a "vast majority" of courts have held COVID-19 causes no physical loss or damage. As an initial matter, AFM makes no attempt to explain how the presence of COVID-19 is any different from the presence of gasoline vapors, friable asbestos, exposed lead particles, methamphetamine vapors, ammonia fumes, offensive odors, mold spores, smoke, insect infestations, and bacteria—all which have all been held to constitute physical loss or damage.[2]

[2] *See, e.g., Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968); *see also Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009); *Mellin v. N. Sec. Ins. Co.*, 115 A.3d 799, 804-05 (N.H. 2015); *Sullivan v. Std. Fire Ins. Co.*, 956 A.2d 643, *7-8 (Del. 2008); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. App. 1997); *Farmers Ins. Co. v. Trutanich*, 858 P.2d 1322, (Or. App. 1992); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 U.S. Dist. LEXIS 165232 *16-17, 2014 WL 6675934

In this regard, AFM's attempts to distinguish the Colorado Supreme Court's decision in *Western Fire* are unavailing. *Western Fire* didn't involve gasoline "seeping into the foundation and interior walls" of the insured premises, but gasoline *vapors* infiltrating from a nearby filling station. Likewise, the distinguishing feature of *Western Fire* was not that the premises were absolutely uninhabitable to all persons, nor that the damage allegedly required remediation as opposed to cleaning,[3] nor that the closure was the "consequential result" of vapor infiltration, but that the closure order prevented the church building from fulfilling its intended function. And while AFM asserts that *Western Fire* isn't controlling because Nevada law applies, the insurer doesn't identify any contrary decisions from Nevada's state appellate courts—because none exist.

Moreover, AFM's suggestion that "physical loss or damage means a structural or physical alteration" reads language into the Policy that isn't there. (Motion at 8). The phrase "physical loss or damage" is undefined in the Policy, and the words "structural" and "alteration" appear nowhere therein. If AFM wanted to limit the Policy's coverage to structural alterations (or distinct, demonstrable alterations) it knew how to do so. Yet it did not do so, and it has not done so despite the great number of cases issued before the Policy's inception rejecting the argument that "physical loss" means "structural alteration."

Even more concerning is AFM's contention that "Monarch's general assertions that

(D. N.J. Nov. 25, 2014); *Stack Metallurgical Serv. v. Travelers Indem. Co.*, 2007 U.S. Dist. LEXIS 9267 *25, 2007 WL 464715 (D. Or. Feb. 7, 2007).

[3] The fact that a cause of loss can be cleaned has no bearing on whether it causes physical damage. Things that have been held to constitute physical loss or damage—like wildfire smoke, friable asbestos, lead particulates, methamphetamine vapors, cat urine odor, carpet odor, drywall gasses, insect infestations, mold growth, chemical spills, and bacteria colonization—can all be cleaned and their presence removed. Nor would an ordinary insured appreciate any meaningful difference between cleaning and remediation.

employees and patrons had COVID-19 are not sufficient" to establish physical loss or damage. (Motion at 8). Monarch's Complaint alleges that COVID-19 was present in its casinos, physically infected surfaces, and required efforts to "remove" the disease. Further, after the Complaint's filing, AFM *acknowledged* that Monarch provided it with information demonstrating the actual presence of COVID-19. And in discovery, it produced a document admitting that an insured location has the actual presence of a communicable disease if a person inside it has COVID-19.[4]

Finally, not one of the federal district court cases cited by AFM involves the broad and uniquely worded policy language at issue here. None of the cases is from the state appellate courts of Colorado or Nevada. Almost none of them involve allegations that the virus was actually present at the insured location. And all of them involve ironclad virus exclusions without the communicable disease coverage that sets this case apart. *See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds,* 479 F. Supp. 3d 353, 354-55 (W.D. Tex. 2020) (anti-concurrent causation virus exclusion with no communicable disease coverage); *Circus Circus v. AIG Specialty Ins. Co.*, 2021 U.S. Dist. LEXIS 36306, *1 (D. Nev. Feb. 26, 2021) (virus exclusion and no communicable disease coverage); *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.*, 2020 U.S. Dist. LEXIS 240060, *2 (N.D. Cal. Dec. 21, 2020) (no allegation that virus was present); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, 2020 U.S. Dist. LEXIS 234651, *3 (N.D. Cal. Dec. 14, 2020) (virus exclusion without disease coverage); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 U.S. Dist. LEXIS 171979, *1 (N.D. Ill. Sept. 21, 2020) (no allegation that virus was on premises).

This case, and this insurance policy, are different. In exchange for $450,000 in annual

[4] Filing a motion for judgment on the pleadings does not give AFM license to take a position that is anathema to admissions it uttered and documents it prepared subsequent to the Complaint's filing. Monarch therefore intends to file a motion to amend the Complaint.

premiums, AFM issued Monarch the broadest coverage available in the marketplace. That coverage included Monarch's business interruption from physical loss or damage "of the type insured" by the Policy, and one type of such physical loss or damage is the actual presence of a communicable disease like COVID-19 coupled with access to an insured location being limited, restricted, or prohibited by a government order.

## IV. Because The Actual Presence Of A Dangerous Communicable Disease Constitutes Physical Loss Or Damage Under The Policy's Plain Language And Established Case Law, AFM's Motion Fails

In the last three pages of its Motion, AFM urges that the Policy provides no coverage for Business Interruption, Civil or Military Authority, Decontamination Costs, and "Other Assorted Coverages" because Monarch's losses were caused by "government orders, not physical loss or damage." (Motion at 12-14). AFM is wrong. Because the actual presence of a communicable disease at an insured location, coupled with access to the location being limited, restricted, or prohibited by a government order, is a type of physical loss or damage insured by the Policy, the factual predicate for these additional coverages is met (and alleged in the Complaint).

Specifically, the Policy states that it "insures Business Interruption, as provided in the Business Interruption Coverage, as a direct result of physical loss or damage of the type insured." (Doc. No. 1, p.16, ¶132). Pursuant to Policy's communicable disease coverages, the actual presence of a communicable disease and a government order limiting, restricting, or prohibiting access constitutes physical loss or damage. (*Id.* at p.13, ¶110). And Monarch alleges every fact supporting its entitlement to Business Interruption benefits, including that it sustained substantial business interruption losses because of such physical loss or damage. (*Id.* at pp.15-18, ¶¶128-45).

Likewise, the Policy's Civil or Military Authority coverage is triggered when a civil authority order "prohibits access to a location provided such order is the direct result of physical

damage of the type insured at a location or within five (5) statute miles of it." (Doc. No. 1, p.21, ¶160). Here, the government orders prohibiting access to Monarch's casinos were more than just a "direct result" of physical damage of the type insured, they *constituted* physical damage of the type insured. Additionally, unmentioned by AFM is that the Complaint also alleges access was prohibited at other nearby locations. (*Id.* at p.21-22, ¶¶166, 169).

Finally, Decontamination Costs coverage is owed "[i]f insured property is contaminated as a direct result of insured physical damage." (Doc. No. 1, p.29, ¶224). Because the presence of COVID-19 is insured physical damage, and because Monarch alleged that its properties were contaminated by COVID-19 and "incurred costs to remove contaminated insured property," AFM is not entitled to judgment on the pleadings. (*Id.* at ¶228).

Respectfully submitted this 26th day of March 2021.

*s/ Nelson A. Waneka*
Bradley A. Levin
Nelson A. Waneka
LEVIN SITCOFF PC
1512 Larimer Street, Ste. 650
Denver, CO 80202
(303) 575-9390
bal@levinsitcoff.com
naw@levinsitcoff.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March 2021, I filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS [DOC. NO. 36]** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

*/s Nicole R. Peterson*
Nicole R. Peterson